All right, the next case we'll hear is Cupp v. Delta Air Lines, and I guess we'll hear first from Mr. Ford. May I approach, Your Honor? Please. Good morning, Your Honors. May it please the Court, my name is Corey Ford. I have the pleasure of representing Mr. Nicholas Cupp in this case. Excuse me if I'm talking a little bit loud. I did have a cold recently. I'll give a brief recitation of the facts, Your Honor. You're probably familiar with this. This was on a 12B6 motion to dismiss. Therefore, this Court reviews it de novo. Mr. Cupp was flying with his family, his daughter, who was 13 at the time, his wife, and his in-laws on a Delta flight from Memphis, Tennessee to Williamsburg, Virginia. It had a rerouting down in Atlanta. It was a brief stop in Atlanta. And as it was descending into the Williamsburg airport, they suffered turbulence, and his daughter started crying. And so he did the same thing that any loving, good father would do, which is he comforted his daughter. The long and short is the flight attendant saw something that she thought was abusive, and the fact of the matter is the police later determined it was not. It was benign. Correct, Your Honor. But the tougher issue is whether we have immunity under the statute. Correct, Your Honor, so let me get right to it because that was it in a nutshell. So one of the things that the district court expressed concern over in this case was the lack of a seminal case or lack of guidance from Virginia Supreme Court on that subject, Your Honor. And I do think a court sitting in diversity on a state law claim like this, that is an understandable position. However, I believe that's putting the cart before the horse, Your Honor. Just like this court, the Virginia Supreme Court can only look at a case or controversy before it. And one of the issues is any lawyer who knows statutory construction in Virginia is going to look at that immunity statute. And if the report was made to law enforcement directly, they are going to say it's not an available defense under this statute. And you're saying because that's the case because Virginia adheres to the plain meaning of the statute. Yes, Your Honor. Is there any point in considering certification of this issue to the Virginia Supreme Court? I don't believe so, Your Honor. I'm going to go. Well, let me ask you a hypothetical just to understand your position because you're absolutely correct that the immunity is intended to encourage reporters, voluntary reporters to report to Department of Social Services. And Department of Social Services has an array of tools by which they can handle that. We have a student in a classroom who sees child abuse. The student reports it to the teacher, and the teacher reports it to DSS. Is the student protected by the act? Yes, Your Honor. There was a case just last year in the Court of Appeals. I'm talking about statutory construction. The student did not make the report to DSS. The student made the report to the teacher. The teacher has mandatory reporting requirements to DSS. Yes, Your Honor. I believe there was a case just last year in the Court of Appeals that addressed that issue, whether passing on information to a mandatory reporter then still allowed immunity. And the court said yes, although there is still a remedy. The Court of Appeals said yes, there's a remedy potentially for abuse or excuse me. Now, the statute also provides that there's going to be cooperation between the police. There's mutual reporting. Law enforcement are mandatory reporters under 1509, and they are actually subject to penalties if they don't report. So just as the teacher reported to DSS and you said the student was protected, the police are mandatory reporters under 1509. And so in this case, if the police had concluded that there was something to it, presumably they would have reported to DSS, right? Under the mandatory requirement to report. Yes, Your Honor. So now you say that my hypothetical where the student reported to the teacher and the teacher reported to DSS, here Delta reported to the police, and the police would have reported to DSS had there been anything to the claim. They concluded there was nothing to it. It was an innocent, it was a misinterpretation of the stewardess was, the flight attendant was misinterpreting conduct. So I have difficulty, if we're going to frustrate, I mean Virginia really wants to make sure that they get reports of child abuse made so that remedies can be held. And if you say that the student reporting to the teacher satisfies the statute, but you say the Delta reporting to law enforcement does not have immunity, I don't understand the distinction. Well, the distinction, Your Honor, is first of all, it's simply statutory. Well, then let's go back to the teacher situation. I asked you whether the student had immunity in reporting to the teacher and the teacher reported to DSS. You said the student is immune, right? You said there's a case that says that. I don't think the case says exactly that, Your Honor, and I want to say that that's a nuance that I didn't appreciate that you were asking at the time. Probably, I'll bet you it's a majority of the situation that the legislature was after, that people who see child abuse, the student may report it to a fellow student, and the fellow student says, oh, that's pretty serious, let's go to the teacher. So they go to the teacher, and the teacher says, yes, that is serious, we're going to report to DSS. Do the students get sued? Are they going to have immunity under the statute? Well, Your Honor, I'd say two things. One, no, they don't have immunity, and that doesn't mean they have strict liability. I'm not sure that's the fair reading of the statute, because the statute does say DSS has to receive it, but it doesn't say necessarily directly, as long as DSS is in the target line of reporting. I mean, I cannot believe that a student reporting child abuse or a daughter reporting child abuse of a stepfather to the mother, and then the mother reports it to DSS. The child has no immunity? That just frustrates the entire statute, because almost all child abuse is being observed by someone, and for them to know they have to go to the nearest DSS office as opposed to somebody who's going to take them to that office would be a total frustration to that statute. Well, Your Honor, I'm not sure it would be a total frustration. So we're not talking about strict liability here. We're talking about whether they have immunity or not, and that's an important distinction to make. Well, I'm not talking about strict liability either. I'm talking about, if I said it, that's wrong. I'm talking about immunity. The legislature clearly wanted to encourage this type of reporting to protect our young and to protect against child sexual abuse. Well, the legislature did want to encourage that, and they baked in the language.  They have mandatory reporting. Anybody they can think of that would be in a position to mandate, they've mandated. They've mandated teacher reporting. They've mandated law enforcement reporting. They have a whole list in 1509. And they, in 1509, they give them immunity too. There's a separate immunity. 1509 are mandatory reporters, Your Honor. 1510 is what we're dealing with under this statute for DELTA.  People do not have mandatory reporting. But both of them say the same thing, that when they witness, a person who witnesses child abuse and reports it to DSS is immune. And your argument is it's fair enough. The statute seems to suggest that the reporter has to go directly to DSS instead of indirectly. That is the express wording of the statute, Your Honor. Well, I'm not sure that direct or indirect. To what extent are you relying on the fact that there are other places in the statutory framework that refer to law enforcement, and the legislature did not choose the words law enforcement in this place? Yes, Your Honor. There are numerous places, but 1507, for instance, where it says DSS may collaborate with law enforcement. And that in itself says, Your Honor, that the legislature knew that law enforcement existed, that they chose not to put it in 1510, which is the statutory immunity provision that DELTA is relying on in this case. Well, they put it in 1509 too. The legislature wants DSS to get the information because they have the tools, they've empowered the agency, they have the expertise. That's an interesting question, Your Honor, and I think that's... Let me just... Yes, sir. They want the information to get there, and to encourage it, they make the people they can control require them to report it to DSS, and those who they can't control, like the public, they give them immunity if they report it. My only question is the fact that the report has to get to DSS, the statute says report to DSS, does that mean it has to go directly or can it go through a parent or a teacher to DSS? And if it can go to a parent or a teacher, then it doesn't mean directly, it means indirectly is OK. Well, I think it deals with what a report or a complaint is, Your Honor. What term of child abuse? We're talking about sexual abuse, observation of conduct that fits the statute. Well, under 63.2-1503, for instance, Your Honor, it says the local department, meaning the DSS, shall be the public agency responsible for receiving and responding to complaints and reports. No dispute about that. Well, there would be no actionable... The legislature clearly wants DSS. The real question is does immunity depend on a direct call to DSS or can it be an indirect call? And the statute is silent on that. And my suggestion to you is that it would totally frustrate the statute if we were to say only those who made a direct call to DSS get the immunity, whereas the person who makes an indirect call doesn't and yet accomplishes the same purpose. I have to respectfully question that, Your Honor, because let me answer that with a question. If any of you witnessed a murder, a robbery, or a carjacking this morning, would you call the police? And the answer is clearly yes, so would I. But do you have immunity for that? No, you don't. Let me ask you, is there any evidence that law enforcement pursued this case and made a report to DSS? No, Your Honor. Okay, so there wasn't an indirect reporting scheme here from one to the other. Well, law enforcement was mandated to do it and they'd be punished if they didn't. What they did is they... She reports it to the captain, right? Yes, Your Honor. Now, if the captain said there's nothing to it, that ends the matter. It doesn't get reported to DSS. This went down a chain that would have gotten to DSS because we presume law enforcement is going to follow its duty. It's mandated and they're going to be punished if they don't, and they're taught about this and they've cooperated. And 1507 talks about how they have to cooperate in their reporting, both for law enforcement, DSS to law enforcement, and law enforcement to DSS. But the question is, in this case, that there was no information. So we could presume, though, if there was a serious conduct that was covered, it would end up in DSS. That's a secondary question. My first question is, if a person voluntarily reports it to a teacher or a parent, which is probably the two most common that we get of observations, and the parent and the teacher then report it to DSS, you say the person reporting does not get immunity. I would say that frustrates Virginia legislature right to the ground. Well, the issue is, Your Honor... Let me ask you real quick because I think the scenario that Judge Niemeyer is giving you is similar to the Goldberg case, just a different statute. And I know you cited it earlier, but I don't think that case helps you because in that case they were making the same argument. And that's the case where the issue is where the statute says that DSS can turn over information if it's unfounded. And I think the case there, they said, well, the grandmother reported it to someone else and they reported it to DSS. And in that case, in Goldberg, and this is the Virginia Court of Appeals, obviously said somewhat similar, I guess, with Judge Niemeyer, you look at the structure of the statute and determine the intent. And they said that basically, in this same example, that, yes, it would be, you would have the immunity there. Okay, that was a little bit different immunity statute? Yeah, no, the statute was different. So the issue there was whether they would still have a remedy to discover the materials. And so I don't think that case is on all fours with this one. The real question here is, the first question is, do they have, does Delta have immunity? And under the express wording, they don't. The fact that law enforcement was used elsewhere, but not in 1510, they don't. The fact that it's a statute in abrogation of the common law. I just want to get the principle because then we can go on to the next step. But the question is, your argument is that the reporter of the conduct has to report directly to DSS or they don't get immunity. Correct, Your Honor. And I'm suggesting to you, if they reported it to their parent or grandparent or the teacher and it then got to DSS, you're saying they would not have immunity. Well, I don't know that a statement relaying the information is the same thing as a report under the statutory scheme, Your Honor. No, the reporter is the person who observes the conduct. So a teenager observes the conduct or very serious conduct. Yes, sir. And the student reports it to the teacher and the teacher reports it to DSS and DSS addresses the conduct. No immunity under your reading. There's no immunity. There also would never be liability under that scenario, Your Honor. But the fundamental difference here is the difference in the way that DSS approaches the report. So, for instance, under 63.1503A, they have the responsibility to respond to complaints and reports. DSS, not the police. So under subsection I of that statute, DSS has to determine the validity of the report of child abuse or neglect. That's before it even goes to the police. The hypothetical does not involve the police. That's a different issue. Because the question is if it can be an indirect report, then the question is when the teacher reports it to the police instead of DSS and then the police report it to DSS, is that any different? And then the question is if the teacher reports it to the police and the police say there's nothing to it and I'm not going to report it on, is the student still protected? And my suggestion is in all of those, the legislature intended to protect the reporter in order to encourage uncovering misconduct of the kind as so at the core of protection of the youth. Your Honor, I'm not sure that those are the whispering of what happened versus an actual report to a state agency is what's at issue here. So what was reported was to the police and Mr. Cup got swatted coming off the plane and separated from his family. It's very different. You keep jumping off my issue. My issue is the statute says a person reporting to DSS is immune, right? Correct. My only question to you is does that mean it gives immunity only to persons who report directly to DSS or will it give immunity to a person who reports to a grandmother and then DSS? I think any report that's not made pursuant to the wording of the statute, Your Honor, is not immune. It's not immune. Do you have any problem with certifying this case to the Virginia Supreme Court? I do not have any problem. You're a notorious plain meaning court. I mean, I can tell you that. I spent half my life on that. Judges. But, you know, there's a very good argument that the legislative purpose was to protect children. I mean, I think that goes without saying. So why not put it to the Virginia Supreme Court? You're a plain meaning court, clearly. Your history is plain meaning. But we have a statute that apparently contemplates this situation to protect children. What gives? Does the plain meaning govern? What's wrong with doing that and getting the word from the highest court of the state? I see no harm in doing that, Your Honor. None whatsoever. And considering the district court's judge's hesitation to make this pronouncement in this case, I think it makes sense. All right. We'll hear from you again. Thank you. Let's hear from Ms. Grace. Is it still morning, Your Honor? Good morning, I think. May it please the court. My name is Catherine Grace. I'm with Wilson-Elster, and I'm here on behalf of the Appalese. And I'm going to lead by saying the cliche. Protect the children. There is zero doubt. That's easy. The statute, Mr. Ford pointed out correctly, the statute says the person making the report to DSS is immune. And my question is, do we read the word directly or indirectly into that? The example I've used with my law clerks is that the Sherman Act says any contract combination or conspiracy and restraint of trade is illegal. And, of course, every single contract that's entered into restrains trade because it precludes somebody else from doing the contract. So the Supreme Court reads into the word any unreasonable. They added the word unreasonable and, of course, developed the body of law. The question I have here is this is intended to protect children. The legislature clearly was after it. And they did say they want the reports to DSS for a lot of good reasons. DSS has got the machinery. They've given them the expertise and all this other business. But the question is, is the immunity dependent on a direct report or a direct or indirect report? And that would be the first question. The second question would be if it's made indirectly, like, say, to the police who have a mandatory reporting aspect, but the police make a decision that there's not enough there, would that still be a protection? Because the police, if it was a legitimate claim, the police would presume to follow the law and to report it to DSS. In this case, that was what happened. But that is the second issue of whether the chain is not completed because of the lack of evidence. But I think the more important question, and I think what Mr. Ford's raising, is the statute says immunity is granted to the person reporting to DSS. And the child that reports to the teacher who reports to DSS does not get immunity then, the student. And that's a very common context in schools where we see it. In homes where often with a stepfather who's abusing a child, somebody witnesses and complains to the mother or to school. Oftentimes it goes to school. But all of those would not have immunity if that's the reading. So I don't know how you can help on the statute. The statute has a lot of indications that law enforcement and DSS are supposed to work closely together. That may not solve the problem, though, of Section 1510, which has the immunity provision. There's a same immunity provision in 1509, I think, for the mandatory reporters. Ms. Grace, aren't you asking us to add language to the statute? You know, Virginia is so hostile to legislative purpose in terms of statutory interpretation. And it just seems to me this is a classic case for the Virginia Supreme Court, the highest court of the state, to tell us. I mean, because I agree with you that the legislature probably intended this. But what the Virginia Supreme Court characteristically would say is they may have intended it. They didn't say it. They're free to amend the statute at the next available opportunity. We encourage them to do so. Do you have any objection to a certification in this case to put it to the highest court of the state? What's the deal? Does the statute cover this or doesn't it? Judge Keene and Judge Niemeyer, forgive me. I'm going to try to answer all of the questions. Let me start with I don't believe there's a need because I believe there's a clear answer to Judge Niemeyer's questions. Number one, it does not say directly to DSS. We all agree that the intent of the statutory scheme is to protect the children. And if you follow the statutory scheme, you absolutely get to law enforcement. In fact, DSS is supposed to be working with law enforcement also. But I think the easiest answer to your question is even if you didn't like the statutory construction argument, even if you said it doesn't say indirectly either, the result would be manifestly absurd. And let me explain my viewpoint on that. In this case, you have a situation where you have a flight attendant responsible for the carriage of passengers, including children. We heard this morning someone argue about the most vulnerable of victims, which is why we have this statute. See something, say something. They're in the air. What state are we over? Should we take a look for the local authority in Fairfax or Loudoun? Should we look to Maryland? Should we look to Virginia? That's absurd. She sees something. According to the appellant, she sees her crying. She sees dad comforting her. She also sees, by the way, according to the pleadings, dad is on this side and mom is on this side. She sees enough that she says, something's weird here, and she tells her captain. According to the appellant, she then escalated her concerns. I think this is sexual abuse, captain, and the intent of this statute is to encourage her to tell someone. Was she supposed to Google the local department? That's absurd. That is not the intent of the statute. Instead, we need to get word to the ground, we get police, and they're an intermediary. They're a mandatory reporter. Why are they mandatory reporters? Because they understand who to call. They know the numbers, the 800 number of the capital department or the local agency, and then that multidisciplinary approach will work itself out. Then, ultimately, yes, the department is going to be responsible for conclusions, bringing it to the court, continuing to work with law enforcement. But why enact the statute? It's to protect the children and necessarily, that means, report. See something, say something. The student should be doing it, the teacher should be doing it, and the teacher, okay, teacher's a mandatory reporter, but forgive me. Imagine a new teacher who doesn't know all the rules, and that teacher calls 911. We're not going to afford that teacher a protection under this statute? That's manifestly absurd. So I think that's the easiest answer, Judge Niemeyer, to your question. Your policy is sound, and the intent is probably there. The question is whether the statute says what appears to be contrary to what the intent. The statute does say, does include the immunity on a report to DSS. It would have been much nicer if they said report comma directly or indirectly to a chain of communications that ends up with DSS or something like that. But they just said report to. So the question is, did the legislature intend to limit the immunity to just someone who does report to DSS and leave everybody else behind? I think it would be a majority of the reports, because I think very few people know that that's where I go. The first thing they think when they see serious child sexual abuse is the law. And, of course, legislature clearly locked the law into DSS. They work with each other closely and are intended to help out on this. But I think Judge Keenan knows well and we have seen well that the Virginia Supreme Court likes to read its statutes the way they say. And maybe they would not read directly or indirectly in there. I'm not sure that's adding substance or not. Forgive me. Let me read additional portions of the statutory scheme. We talked about 1512. We talked about 1510. But in addition, local department is defined by guess what? The local department. So you have a capital D or report it to the local department, which the statute says is the local department of social services. When you read social services, social services becomes then more broad. Foster care, adoption, adoption assistance, child protective services, domestic violence services, or any other program implemented in accordance with the regulations. 1503 then goes on to say that the local department shall notify the local law enforcement agency of sexual abuse suspicions. So this is really escalating. This is not just neglect. Maybe the child didn't get. So the legislature understood the distinction between the DSS and law enforcement. They understood they were two different entities. So the only way that you can prevail today is to convince us that legislative purpose trumps plain meaning. Isn't that correct? No, Your Honor, and I would have two responses to that. It does not say directly to law enforcement. So for, excuse me, to the local department. So, for example, under Wolf, this very court encountered a situation where, in fact, there was a report to police. And ironically, it was because the DSS voice message said contact the police. Because guess what? The local department isn't available 24 hours a day. You can't always reach them. Does that mean we should ignore our suspicion of child abuse? No, of course not. And then the other part, Your Honor, in response to that is the Virginia law still allows for the ignorance of statutory construction if the result is manifestly absurd. That's Halifax. I would think your case has helped best if we use a verb that is a communication verb that we conclude that word includes direct or indirect. The question is when you call somebody on the telephone and you go through an operator, is that direct or indirect? Yet we say we call somebody. If we report something to DSS, we report it to our teacher who reports to DSS, that still might be reporting to DSS. But that report wasn't made to DSS in this case. Your Honor . . . They let go immediately. So it seems to me your whole analogy fails from the get-go because the direct versus indirect analogy would be inapplicable when no report was made indirectly to DSS. I disagree for two reasons. One, the evidence is not in the record one way or the other. Okay, but there is no evidence. If that reporting was ever made. You do agree there's no evidence that DSS was contacted in this case by Delta Airlines. I agree, but it was reported to a mandatory reporter, and why is that important to me? The mandatory reporter's failure to report the suspicion is a violation and they can be prosecuted. That's why it's mandatory reporting. So you're saying you're assuming that it was done? I'm not making . . . You presume it because they're mandatory. In other words, had they concluded that there was sexual abuse, they would have reported it. That's not a hard gap to jump on under the statute. I think the harder gap is whether going through the captain and . . . It seems to me if you report to the police and they decide there's nothing to it and they don't report to DSS, if there was something to it, it would be pretty clear they would report to DSS because they have to, they're taught that, and it's mandatory and they're punished. But the bigger question, I think, is how broadly do we read the verb? Forgive me, Your Honor. I have to step back, and I know we're dealing with the police, law enforcement, and the analysis in your view seems to be a bit different. It's still mandatory reporting. This is not an obligation to investigate. It is a mandatory report to the local department or DSS. Just because the police decided to let this person go or there lacked probable cause, there is a report of suspicion of child sexual abuse. They're a mandatory reporter. Again, there's a distinction for a reason. The mandatory reporters understand. I know the 800 number because I work in Newport News, and I know we work closely. I know who to call. I know Jane or Bob or Mr. Smith over there. I know who to call, and that's why there's this distinction. And I understand what Your Honor is saying, but I would still say that if you strictly construe the statute, the report ultimately is the report of sexual abuse. I'm not alone in this analysis. The Wolf Court certainly agreed with that analysis, as did, and I'm going to pronounce the name wrong, there was a court in Western Virginia who said the same thing. It's a distinction without a difference. That was the language that they used. And if Your Honor wants me to get that, I can do that. Excuse me. Just for the record. So there were three judges, excuse me, three courts, including this court, that agreed with me that there is a distinction without a difference. It is the Blott v. Edwards case, Northern District of Western Virginia in 2009, that drew the same conclusion. The report to law enforcement was a distinction without the difference for the purpose of finding immunity, and they found immunity in that case. And I believe that that's particularly persuasive and compelling. But coming back to the Wolf case, the Wolf case analysis. Is that case in your brief? It is in our brief, Your Honor, yes. You mean the Blott case? Yes, Your Honor, it is. And in the Wolf case, back to 2009, Judge Wilkinson, who also was joined by Judge Gregory, who I know is also still on this court, found the same. In that case, there was a telephone call to DSS, but they got a voice recording that said, call the police if you have a suspicion. And that's what happened. And so under the strict reading of the statute, Your Honor, Judge Niemeyer, if my colleague here is correct, they don't get the protection because ultimately the report was made to law enforcement. They involved law enforcement. But Wolf, they were talking about bad faith and malicious intent, weren't they? That was the second part of the analysis, yes, Your Honor. I mean, that's where the case went. And I guess this really all comes down to the question of legislative intent and what role it plays in statutory interpretation in Virginia law. I mean, isn't that basically the issue here? I agree it's the issue, Your Honor. But the way I read that statute is that there is no requirement for direct, that reporting to an intermediary, just as in Wolf, is sufficient to afford the reporter protection. The reason being, I'm going to have to end the way I started, protect the children. Everybody wants to protect the children. You know you're making a jury argument here. It is perhaps an ill place. Everybody wants to protect the children. So one of the other portions of Wolf, Your Honor, before it got into the bad faith analysis, there is language that talks about reporters are protected. A person who reports suspected child abuse pursuant to either 1509 or 15… Could you give us the page type? Yes, Your Honor. 317. It's really 317 to 318, Your Honor. But that the reporter shall be immune from any civil or criminal liability in connection therewith… What case is this? This is Wolf, Your Honor. Wolf, okay. So this is Judge Wilkinson. The statutory framework is designed to encourage those who genuinely suspect a child is at risk to report their suspicion to authorities without fear of civil liability. And again, this is a case where the initial report actually went to a local sheriff's office, who then, of course, worked in tandem with the local Department of Social Services. But the issue, again, the holding of the case was on the bad faith. You know, they say here, plaintiffs have not alleged or suggested any untoward, animus, preexisting bad blood, desire for revenge, or the like that would strip Stevens of immunity. And then goes on. That's the holding of the case. That's correct. But in order to get there… It's stating some very garden principles that the purpose of the statute is to protect children. But it's not saying what you're saying regarding the chain of reporting. But it does presume immunity in those factual circumstances. Correct, Your Honor. Correct. It grounds it on, it assumes there is immunity. That's correct, Your Honor. And the… Let me ask you this because I see your time is almost up. Because I think we've gone… The question regarding immunity. But if this court was to find that the immunity applied to Thomas, the reporter, does that immunity… Is it derivative, I guess, in terms of Delta and Endeavor? Absolutely, Your Honor. This is not an issue of procedure. This is an issue of immunity. And she was working for her employer at the time. And the same question would be asked. If I was standing here on behalf of Ms. Thomas or either airline, the question remains the same. It is about her behavior and whether her behavior warrants the immunity under the statute. And the only reason I ask that is because I'm familiar with the case. I'm sure you are. That Stute case where it says that the liability does not extend to the employer. And I know the facts in there were different and the statute was a little bit different. That, I think, is the immunity when you report. If you try to help someone and then you injure them or whatever, it is a negligence case. But that case does give me a little bit of concern about whether or not it applies to… And I know that's one of the issues that they have here. Of course, we've been talking about Thomas. But if we are to decide that Thomas has immunity, does that mean that Delta, and based on that case, does that mean that Delta and Endeavor have immunity? Yes, Your Honor. Necessarily so. And if it were the opposite, it would be because they cannot be held responsible for her reporting. That shouldn't be in the case at all. But if, in fact, they can be held responsible under respondeat superior, then they necessarily would be afforded the immunity that she would be afforded. Thank you very much for your time, Your Honors. I would ask that the decision be affirmed in the local court. All right, Mr. Clark. Your Honors, briefly, I think some issues are getting a little bit befuddled. Delta is not a mandatory reporter in this case. This was passed on from a flight attendant to the pilot, a Delta pilot, to the station manager who is a Delta employee to the police. Nobody in that chain was a mandatory reporter. And that's very different because that meant that there was a police response instead of a DSS inquiry into validity. So let me go through that really quickly because I think we're befuddling issues. Under 63.2-1508, a valid report or complaint means the local department, that's DSS, has evaluated the information, allegations of the report or complaint, and determined that the local department shall conduct an investigation, family assessment, or human trafficking assessment because the following elements are present. And then there's a bunch of elements. So first of all, they are trained, they have CLE hours, they have education requirements for these workers. They make the initial determination of whether it is, in fact, a valid or invalid complaint. Not called the police yet. They make the threshold determination. That is in subsection I of 1503, the statute she just cited. They don't all get reported to police. The valid, you have to read that the valid complaints get reported. But this is nothing new. What you have is you have various people getting information and making assessments. Correct. And it's clear that the Department of Social Services has given the tools and they have the expertise to address this issue, and that's where the legislature wanted it handled. But they also recognize that this also implicates the criminal statutes, and they have a close relationship with law enforcement. 1507 is all devoted just to that, creating that relationship. And then they have this immunity, which is a little strange. The language is not quite as direct as I thought it might be. The language says a person making a report pursuant to 1509, a complaint pursuant to 1510, or takes a child into custody pursuant to 1517. So a person making a report pursuant to 1510, that would be this one. Yes, sir. The question is, is a person making a report pursuant to 1510, do they have to be making it to DSS? Yes, Your Honor. Or do they have to make it with the intent to, because 1510 is a person who suspects child abuse. That's the nature of the complaint. They don't have to be right, Your Honor. They just suspect it, and if they make it pursuant to 1510. But I would add, going beyond, if you would, look at 1510 and look at all the permutations that it gives you. So it starts out with give a complaint to the DSS, you are immune. Then it says, well, what if the person who the complaint is against is in the local DSS? In other words, you now have a wolf guarding the sheep situation. You can't make the complaint to the local DSS. Well, if they're interchangeable, surely, Your Honor, the legislature meant that now the judge can call the police. No. It says, if an employee of the local department is suspected of abusing or neglecting a child, the complaint shall be made to the court of the county or city where the abuse or neglect was discovered. Still not the police. None of this talks about the immunity. The immunity section uses just the word pursuant to. Pursuant to, Your Honor. So if somebody makes a complaint pursuant to 1510 and does so imperfectly, it would seem that 1512 would still say it's okay. A person making a complaint pursuant to 1510 is immune. And does that include it has to go to DSS, or does that mean referring to a complaint just pursuant to is a complaint about sexual abuse? Anyway, the statutory construction is not totally black and white, in my judgment. Your Honor, I would say that I think this is being presented as a fallacious argument to a certain extent. The competing concerns are already baked into the language of 1510 under a non-mandatory report. So, in other words, this was a non-mandatory report. This isn't a 1509. This is a 1510. I could easily just say, you know, we all want to protect the children. That's clear. I could easily say that a spurious report that has, if you give too much immunity, we have something like this. There was no indication that this is human trafficking. There's no indication this is sexual abuse. Well, that's not an issue here, you know. You keep wanting to go off on these things. The question is immunity. That's the only issue that we're really addressing here. Correct, Your Honor. And we're looking at, we have to assume there was a suspicion. There's no evidence that this flight attendant didn't know these people in advance. They had no motive, and you've alleged that in the complaint. Basically, there's no malice, none of that exception. We're looking at whether this immunity, and that's where your brief couches it, is granted where the report is not made to DSS. You're correct, Your Honor, and it's not. Under the reading of the statute, and if you go through all those permutations under 1510, it's remarkable to think that the legislature never considered that calling law enforcement was an available option, even though they used law enforcement in 1507. They clearly want these reports to go to DSS, Your Honor. Well, it told you where to make the reports. When you have a complaint, it tells you where to make it, but the immunity isn't conditioned on that. The immunity says anybody making a complaint pursuant to 1510 is immune. Yeah, Your Honor, and I think the legislature clearly meant pursuant to it means in accordance with. I asked her the same question because I know this is your other argument in the case, is that if we were to find that Thomas was immune, I think it's your position that that immunity does not, I guess, transfer or is not derivative to Delta or Endeavor. That is correct, Your Honor. So what's your best argument? I have a brief. May I grab something, a paper from right back here, Your Honor? It'll only take 10 seconds. Well, I'll just tell you, at the end of the Stutes case, Your Honor, the court quotes Hughes v. Doe, and it's very clear that it has to be a verdict of non-negligence against the immune actor. And that was even in the Stutes case, Your Honor, where they found that the ambulance drivers, the EMT personnel, were in fact immune under the Good Samaritan Statute, and there were some other different background issues there. But they were in fact immune, and even then the court remanded that because the record was unclear whether— It's sort of strange to have an employee of a company who makes a report immune, but the company itself on derivative liability is not immune. It is, in fact, Virginia law, Your Honor. There is no—first of all, count one is failure to train. Our position on this was there was absolutely no reason for this flight attendant to say this was human trafficking. This is contextualized behavior. He's comforting his daughter who is crying in turbulence. Well, we can't resolve that. I understand that. There's something that troubled her, and she reported it, and she added later there was some inappropriate touching. So we can't resolve that. That's alleged in the complaint, and the issue here is whether she's immune from making that report. Yes, Your Honor, and so our count one is failure to train, failure to supervise, failure to provide proper protocols so that she could differentiate normal, innocuous, completely good behavior from human trafficking and things of that nature, and it appears my time is up, Your Honor. I'd like to distinguish wolf and beloved, but— All right, thank you very much. We'll adjourn court for the day.
judges: Paul V. Niemeyer, DeAndrea Gist Benjamin, Barbara Milano Keenan